# CIVIL COVER SHEET

HB

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ELBA ORTIZ | RALLY MOTORS AUTOMOTIVE, INC. |

| | |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff **PHILADELPHIA** (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed (IN U.S. PLAINTIFF CASES) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| | |
|---|---|
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) ROBERT P. COCCO, P.C. 1500 WALNUT ST., SUITE 900 PHILADELPHIA, PA 19102      215-351-0200 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff)
### (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Law | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgments Act | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395 ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIW C/DIW W (405 (g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Force Insure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS –Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V.  ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 (specify) Transferred from another district
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. §1640(a)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in Complaint
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____  DOCKET NUMBER _____

JUN 4 2013

DATE  5/30/13

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**HB**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

ELBA ORTIZ, ROBERTO YZAGUIRRE                  CIVIL ACTION

Plaintiffs,

v.                                              NO.        13    3055

RALLY MOTORS AUTOMOTIVE, INC et al.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)    Habeas Corpus -- Cases brought under 28 U.S.C. §2241
       through §2255.                                              (    )

(b)    Social Security -- Cases requesting review of a
       decision of the Secretary of Health and Human Services
       denying plaintiff Social Security Benefits.                (    )

(c)    Arbitration -- Cases required to be designated for
       arbitration under Local Civil Rule 8.                      (    )

(d)    Asbestos -- Cases involving claims for personal
       injury or property damage from exposure to asbestos.       (    )

(e)    Special Management -- Cases that do not fall into
       tracks (a) through (d) that are commonly referred to
       as complex and that need special or intense management
       by the court. (See reverse side of this form for a
       detailed explanation of special management cases.)         (    )

(f)    Standard Management -- Cases that do not fall into any
       one of the other tracks.                                   (  X  )

5/30/13                                                           JUN   4 2013
(Date)                         Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __890 Carver St., Philadelphia, PA 19124.__

Address of Defendant: __6701 Rising Sun Ave., Philadelphia, PA 19111__

**13    3055**

Place of Accident, Incident or Transaction: __890 Carver St., Philadelphia, PA 19124.__
*(Use Reverse Side For Additional Space)*

Does this case involve multidistrict litigation possibilities?                    Yes ☐   No ☑

*RELATED CASE, IF ANY:*    **None.**

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

Yes ☐ No ☑

2. Does this case involve the same issue of factor grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

Yes ☐ No ☑

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
(Please specify)

B.  *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability - Asbestos
9. ☐ All other Diversity Cases

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, __Robert P. Cocco,__ counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

JUN  4 2013

DATE: __May 30, 2013__          _____          __61907__         .
                                          Attorney-at-Law                              Attorney I. D.#

**NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38**

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __May 30, 2013__          _____          __61907__         .
                                          Attorney-at-Law                              Attorney I.D.#

$400



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

ELBA ORTIZ                            :
ROBERTO YZAGUIRRE                     :
                    Plaintiffs,       :
                                      :
        v.                            :
                                      :
RALLY MOTORS AUTOMOTIVE, INC.;        :
NICK KIRBY;                           :       Civil Action No.:
UNITED AUTO CREDIT CORP.,             :
                    Defendants.       :

FILED
JUN 4 2013
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

**COMPLAINT**

## I.   Jurisdiction and Venue

1.     Jurisdiction arises under the Truth in Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.     Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

## II.   Parties

3.     Plaintiffs, ELBA ORTIZ and ROBERTO YZAGUIRRE, are adult individuals presently residing together at 890 Carver St., Philadelphia, PA 19124.

4.     Defendant, RALLY MOTORS AUTOMOTIVE, INC. ("Rally") is a corporation licensed to do business in the Commonwealth of Pennsylvania as an installment sales dealer of motor vehicles, and having a principal place of business located at 6701 Rising Sun Ave., Philadelphia, PA 19111; at all times relevant, acting alone or in concert with others, formulated,

–1–



directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

5.      Defendant, NICK KIRBY ("KIRBY"), is a supervising agent and/or employee of Defendant, RALLY, and holds a management and/or sales position at and/or with said Defendant, and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

6.      Defendant, UNITED AUTO CREDIT CORP. ("United") is a corporation licensed to do business in the Commonwealth of Pennsylvania, that regularly does business in Philadelphia County, and that has headquarters located and at P1071 Camelback, Newprt Bech, CA 92660, and all times relevant, acting alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

7.      At all times relevant hereto, Rally and United regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

III.    **Factual Allegations**

A. **First Sale Transaction**

8.      At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

–2–

9.     On or around January 5, 2013, Plaintiffs visited Rally's dealership located at the address listed above.

10.     Prior to the execution of any agreements, and at all times relevant thereafter, the defendants' agents, including Kirby and/or those identified on the attached sales document, concealed the following facts from the Plaintiffs about subject vehicle:

      a.    that the vehicle had frame damage;

      b.    that the vehicle was unsafe;

      c.    that the vehicle was defective;

      d.    that the vehicle was unfit and unmerchantable;

      e.    the vehicle was not carefully or meaningfully inspected;

11.     Based on defendants' representations, Plaintiffs and defendants executed a Buyers Order (BO) and Retail Installment Sales Contract (RISC 1) dated January 5, 2013, ostensibly and apparently agreeing to the terms for the financed purchase/sale of a 2006 Nissan Altima (VIN #1N4AL11D26N419939) (Exhibits 1 and 2).

12.     Dealer Rally assigned Plaintiffs' RISC to defendant United.

**B. Second Sale Transaction**

13.     After purchase, Defendant Kirby contacted Plaintiffs and advised them that defendant United had rejected the financing of the RISC and that they had to come in and sign a new contract.

14.     Based on defendants' representations, Plaintiffs and defendants executed a second Retail Installment Sales Contract (RISC 2) dated January 24, 2013, ostensibly and apparently agreeing to new terms for the financed purchase/sale of the vehicle with increased monthly payments of $337 rather than $304 (Exhibit 3).

**C. Post Sale Facts**

15.     After purchase, Plaintiffs experienced numerous mechanical problems with the vehicle.

16.     Further examination of the vehicle determined that the vehicle was involved in a December 17, 2010 collision accident which caused severe damage to the vehicle's left front drivers' side and consequent structural distortion of the fender apron located there which is readily apparent upon lifting the Vehicle's hood to anyone with experience in the automotive trade.

17.     Further examination of the Vehicle revealed numerous obvious indications of prior repairs including color mismatches and missing labels indicating replacement parts, bolt halos indicating frame distortion, and paint overspray.

18.     A reasonable and industry standard inspection performed by a reasonably competent technician could not have missed the pre-existing collision damage, repairs, and existing defects.

19.     The subject vehicle was severely damaged, including frame or structurally damaged, prior to the time of the subject sale.

20.     The subject vehicle was in a defective and damaged condition, including frame and structurally damaged condition, at the time of the subject sale.

21.     The subject vehicle was unsafe, unroadworthy, unfit and unmerchantable at the time of the subject sale.

22.     If the vehicle had, and if Plaintiffs had known that the vehicle had been in an accident or had been damaged, had frame or structural damage, or that the defendants had

–4–

misrepresented anything or charged any unlawful fees, then Plaintiffs would have not purchased the vehicle.

23.     Pursuant to the express terms of the RISC, state common law of assignments, and Statutory law, United "stepped into the same shoes" as the Dealer Defendant Rally and became derivatively, jointly, severally and fully liable for all of the Dealer Defendant Rally's misconduct.

24.     On or about May 28, 2013, Plaintiff Ortiz advised defendant United by phone of Rally's misconduct as alleged herein.

25.     Defendant United informed Plaintiffs that, because plaintiff had only made a few monthly payments towards the RISC, there was nothing United could do about plaintiff's fraud complaints at present and that if plaintiffs stopped making their payments, United would adversely report it on their credit.

26.     United then advised plaintiff Ortiz that if plaintiffs continued making payments for several more months, plaintiff could consider trading in the car to Rally. UAC informed me if I stop payments my credit will be affected, there was nothing UAC can do.

## ADDITIONAL ALLEGATIONS

27.     Defendants never expressed in any manner any allegation that Plaintiffs supplied any false or unverifiable information in connection with the transaction.

28.     Defendants never expressed in any manner any allegation that any of Defendants actions were as set forth herein were taken as a result of any false or unverifiable information supplied by the Plaintiffs.

29.     Defendants never expressed in any manner any allegation that Plaintiffs was to blame for any of Defendants' actions.

30.     At all times relevant, Defendants promised to take good care of the Plaintiffs.

31.     Defendants stood in a position of trust and confidence with plaintiffs having sold plaintiff Yzaguirre another used vehicle.

32.     Plaintiffs surrendered substantial control over the financing of the subject purchase.

33.     By virtue of their position of trust and confidence, their unequal sophistication and expertise, Defendants had the means to take advantage and exercise undue influence over Plaintiffs.

34.     The purchase of a motor vehicle is one of the largest investments that many, if not most, consumers make.

35.     The subject purchase was one of the Plaintiffs' greatest investments.

36.     The Defendants exploited their fiduciary relationship with Plaintiffs by deceiving the Plaintiffs regarding the party's respective rights and duties under the RISCs, and concealing Defendants' misconduct.

37.     Rally is a licensed dealer in the Commonwealth of Pennsylvania.

38.     Kirby is a licensed motor vehicle sales person in the Commonwealth of Pennsylvania.

39.     The subject vehicle was purchased by the Plaintiffs primarily for personal use.

**D. "Yo-yo" Sales Practices**

40.     The established business practices described above and below were part of a systematic business practice called "spot delivery" or "yo-yo delivery" intended to secure for Defendants unearned dealer profits.

41.     The established "spot delivery" or "yo-yo delivery" practices described above and below are unlawful, deceptive, misleading, and fraudulent.

42.     The established "spot delivery" or "Yo-Yo delivery" practices described above and

below commenced prior to the execution of any agreement, were designed and intended to induce the Plaintiff to enter into an agreement, and persisted after the apparent agreement was consummated.

43.     During all times relevant the Defendants deceived the Plaintiff into believing Defendants' actions were lawful, and/or concealed their actions' unlawful nature.

44.     The Defendants induced and entered into the subject purchase-sale agreements with a then present and conscious intention to breach, reject, and/or refuse to honor their obligations under said agreement.

45.     The established business practices discussed in the preceding paragraphs were created, implemented, approved, and/or supervised by the Defendants.

46.     As a result of the Defendants' unlawful actions, the Plaintiffs have been deprived of the use of the vehicle, has incurred expenses for replacement transportation, have suffered damage to their personal property, including credit rating and credit reputation, and has suffered extreme emotional distress, frustration, humiliation, and/or embarrassment.

47.     Plaintiffs have been and will continue to be financially damaged due to Defendants' intentional, reckless, wanton, and/or negligent failure to honor their contractual obligations and the damage to their credit rating and reputation.

−7−

48.     During all times relevant the Defendants deceived the Plaintiffs into believing Defendants' actions were lawful, and/or concealed their actions' unlawful nature.

49.     At all times relevant, the Plaintiffs relied on Defendants' apparent and claimed experience, sophistication and expertise in inspecting, repairing, selling and/or financing motor vehicles.

## COUNT I – TILA
### (Plaintiff v. Defendants Rally and United)

50.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

51.     It is the purpose of the Truth in Lending Act, 15 U.S.C. § 1638 ("TILA") to assure a meaningful disclosure of credit terms in order to prevent the uninformed use of credit and to protect consumers against inaccurate and unfair practices involving certain credit sales.

52.     Meaningful and timely disclosures of the terms of financing provide consumers with knowledge of the "true" cost of credit prior to consummation of the transaction.

53.     In the yo-yo sale described herein, the dealer treated the RISC 1 transaction as conditional, in spite of the fact that the consumer had signed a binding RISC which contained all of the terms of the contract and mentioned nothing about a condition precedent to approval of the financing or assignment of RISC 1.

54.     As a result of this undisclosed conditional nature of RISC 1, it cannot be determined when the financing of the transaction began; in turn, the first payment period is shortened and this caused the annual percentage rate calculation to be inaccurately disclosed in RISC 2.

55.     Failure to accurately disclose the applicable annual percentage rate is a violation of

–8–

the TILA, 15 U.S.C. § 1638(a)(3); Reg Z § 226.18(32); Reg Z § 226.22.

## COUNT II - FRAUD
## PLAINTIFFS v. ALL DEFENDANTS

56.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

57.     Prior to the execution of any agreements, and at all times relevant thereafter, the Rally's agents, including defendant Kirby and/or those identified on the attached sales document, concealed the following facts from the Plaintiffs about subject vehicle:

        a.     that the vehicle had frame damage;

        b.     that the vehicle was unsafe;

        c.     that the vehicle was defective;

        d.     that the vehicle was unfit and unmerchantable;

        e.     the vehicle was not carefully or meaningfully inspected;

        f.     the Defendants did not conduct the sale and/or financing or complete the paperwork lawfully;

58.     Prior to the execution of any agreements, and at all times relevant thereafter, defendants, individually or by and through their agents, including defendant Kirby and/or those identified on the attached sales document, concealed the following facts from the Plaintiffs about subject vehicle:

        a.     the Defendants did not intend to sell plaintiffs the vehicle on the terms set forth in RISC 1;

        b.     the Defendants did not conduct the sale and/or financing or complete the paperwork lawfully;

        c.     Defendant United did not have legal liability under the terms of the RISC for the sales fraud perpetrated on plaintiffs by Rally

–9–

59.     Defendant United intentionally concealed its legal liability and ability to influence Rally to modify or cancel the disputed transaction with the intent to join in and further Rally's fraud against plaintiffs for the purpose of inducing plaintiffs to remain in the fraudulent deal

60.     As a result of the concealment or suppression of the aforesaid facts, plaintiffs sustained damages by United misrepresenting to plaintiffs that they had no legal recourse to contest the fraudulent deal in order to reap grossly inflated profits from the sale of marginal and dangerous vehicle.

61.     The misrepresentations and omissions identified in the immediately preceding paragraphs, were known or should have been known to Defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiffs, and in fact, induced her to purchase the automobile at the price listed in the purchase agreement.

62.     The Defendants knew that the Plaintiffs had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

63.     The Plaintiffs relied on the Defendants' misrepresentations and were induced to sign the RISCs and other documents related to which they apparently and ostensibly purchased and financed the aforementioned automobile at the inflated amount listed in the purchase agreement.

64.     As a result of the aforementioned conduct, the Plaintiffs suffered the damages outlined above and below.

65.     The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

−10−

## COUNT III
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE
## PRACTICES AND CONSUMER PROTECTION LAW
## PLAINTIFFS v. RALLY & KIRBY

66.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

67.     Plaintiffs as purchasers are each a "consumer" as that term is contemplated by the Act.

68.     Dealer Rally and its employee defendant Kirby are each a person engaged in trade or commerce as that term is contemplated by the Act.

69.     The actions and omissions of Defendants as hereinbefore and hereinafter described constitute violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S.A. §. 201-1 *et seq.*, which are in-and-of-themselves fraudulent, deceptive and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 *et seq.*

70.     The actions and omissions of Defendants has hereinbefore and hereinafter described constitute violations of the following sections of the UTPCPL 73 P.S. § 201-2(4):

> (ii)   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> (vii)  Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (xxi)  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

**Pennsylvania Automotive Industry Trade Practices**

–11–

71.     Rally failed to disclose frame damage to the vehicle as required by the Pa. Code

§ 301.2. sets forth affirmative duties for sellers like Peruzzi to comply with in its sale of a vehicle

to a consumer:

### § 301.2. *Advertising and sales presentation requirements.*

With respect to an advertisement or sales presentation offering or making available for sale a new or used motor vehicle or maintenance service or repair on a new or used motor vehicle, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

…

(5) The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another or if the representation conflicts with a written notice or disclosure required under this chapter. For the purposes of this chapter, a motor vehicle which is offered for sale is represented to be roadworthy, and the advertiser or seller shall disclose prior to sale the following conditions if the advertiser or seller knows or should know that the conditions exist in the motor vehicle:

　(i)　Frame bent, cracked or twisted.

…

 (6) The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

72.     The defendant's representations and/omissions outlined in previous paragraphs

were false, were known or should have been known to defendants to be false when made, were

material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiffs,

and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

73.     Rally knew or should have known that the Vehicle was in a defective condition

–12–

based on:

      a)      their inspection of and the condition of the vehicle;

      b)      its prior use history

      c)      the vehicle history report;

      d)      its prior repair history;

      e)      its prior ownership history and their reputation in the industry;

      f)      their experience in the trade;

      g)      their familiarity with reports in popular and industry related media;

      h)      the manufacturer's warranty and repair history and/or database.

74.     Rally knew that the Plaintiffs had no special knowledge in the purchase and condition of automobiles and would rely on their representations.

75.     The Plaintiffs relied on Rally's misrepresentations and was induced to purchase the aforementioned automobile and service contract at the inflated amount listed in the purchase agreement.

76.     As a result of the aforementioned conduct, the Plaintiffs suffered the damages outlined above and below in addition to extreme mental anguish, frustration, humiliation, embarrassment and stress.

77.     The defendants' actions as hereinbefore described, including but not limited to concealing the vehicle's history and defects which reduced or eliminated the vehicle's market resale value as a used vehicle, were reckless, outrageous, willful, and wanton.

78.     Defendants' licenses may be revoked if it has violated any provision of the MVSFA.

–13–

79.     Defendants must maintain satisfactory records to determine that the business is being operated in accordance with the MVSFA and may not falsify any records.

**COUNT IV - NEGLIGENCE**
**PLAINTIFFS v. ALL DEFENDANTS**

80.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

81.     The Defendants were negligent in the following respects:

a.  failing to institute appropriate policies and procedures to comply with the applicable laws;

b.  failing to institute policies, train personnel, and supervise personnel regarding lawful financing and/or sales presentations;

c.  failing to institute policies, train personnel, and supervise personnel regarding proper pre-sale inspections of vehicles;

d.  failing to institute policies, train personnel, and supervise personnel regarding Title transfers;

e.  failing to institute policies, train personnel, and supervise personnel regarding financing agreements;

f.  failing to institute policies, train personnel, and supervise personnel regarding sales of and performance obligations related to service contracts.

g.  failing to hire competent and/or honest personnel, such as mechanics and salespeople;

h.  failing to properly train and/or supervise its personnel;

–14–

    i.   failing to honor RISCs and their other promises and representations described more fully above and below.

    j.   failing to properly inspect the vehicle, detect defects therein, and/or report said defects to the Plaintiffs;

    k.   violating 13 Pa.C.S.A. § 101 et seq., 75 Pa. C.S.A. § 7131 et seq., 69 P.S. § 601 et seq., 37 PaC. § 301 et seq.

82.    Plaintiffs suffered actual damages proximately caused by Defendants' negligence as alleged above.

83.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

WHEREFORE, Plaintiffss demand judgment against the Defendants in an amount greater than Fifty Thousand Dollars ($50,000), together with attorneys' fees and interest, and such other relief as the Court may deem appropriate.

## COUNT V - NEGLIGENT MISREPRESENTATION
## PLAINTIFFS v. ALL DEFENDANTS

84.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

85.    The conduct of the Defendants as alleged in addition to and in the alternative constituted separate negligent misrepresentations that were false because of the failure to exercise reasonable care or competence in obtaining or communicating the information, including but not limited to misrepresentations about the vehicle's history, condition and value and regarding the sale terms and financing.

–15–

86.     The Defendants supplied information including but not limited to that the vehicle had not been in an accident or damaged, that the vehicle was good, safe and operable, that all paperwork was being completed lawfully, that all fees and charges were lawful, which induced Plaintiffs to purchase the vehicle and/or taking or refraining from taking action with respect to the vehicle, such as returning the vehicle or rescinding the purchase contract and/or filing suit.

87.     As a direct and proximate result of these negligent misrepresentations, the Plaintiffs suffered damages as alleged.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A. Defendants Rally and United are therefore liable to plaintiff, pursuant to 15 U.S.C. §1640(a)(2)(A)(i), for statutory damages equal to twice the finance charges.

B. Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1640;

C. Actual damages against all defendants;

D. Treble actual damages under the UTPCPL and reasonable attorney fees and costs against Rally and Kirby.

E. Punitive damages for fraud against all defendants.

## TRIAL BY JURY

88.     Plaintiffs are entitled to and hereby respectfully demand a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

Dated: May 23, 2013                          RC935
                                             ROBERT P. COCCO, P.C.
                                             BY:     Robert P. Cocco
                                             Identification No.:   61907

–16–

1500 Walnut Street - Suite 900
Philadelphia, PA   19102
(215) 351-0200

/s/William Bensley
BENSLEY LAW OFFICES, LLC
William Bensley, Esquire
Identification No.:   79953
1500 Walnut Street - Suite 900
Philadelphia, PA   19102
**Attorneys for Plaintiff**

Ex. 1

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ _____ |
|---|---|---|---|---|
| % | $ | $ | $ | $ |

**Your Payment Schedule will be:**

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| | $ | Monthly, beginning |
| | $ | |

Security: You are giving a security interest in the motor vehicle being purchased.

Prepayment: If you pay off early, you will not have to pay a penalty.

**Filing Fees: $** _____

**Late Charge:** If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.   **e means estimate**

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

In this Contract, we are the SELLER. _____ Name _____ Address _____ Zip Code

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

You are the BUYER(S). ROBERTO YZQUIERDO _____ Name(s) _____ Address(es) _____ Zip Code(s)

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

CASH PRICE ☐ INCLUDES / ☐ DOES NOT INCLUDE OPTIONAL SERVICE CONTRACTS AND WARRANTIES IN THE AMOUNT OF $ _____

**TRADE-IN:**
You have traded in the following vehicle: _____ Year and Make _____ Description

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except in the "Itemization of Amount Financed" as the "lien payoff" period.

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit.

By signing, you select Single Credit Life Insurance, which costs $ _____

What is your age? _____ Years

_____
Signature of Buyer to be insured for Single Credit Life Insurance

By signing, you select Single Credit Accident & Health Insurance, which costs $ _____

What is your age? _____ Years

_____
Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ _____

What are your ages?

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ _____

What are your ages?

Percentage to be insured

1. _____
2. _____
Signatures of both Buyers to be insured for Joint Credit Life Insurance

1. _____ %
2. _____ %
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

**Insurer:** _____

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| | | | | | | |

Equipped with  A.T.  P.S.  AM-FM Stereo  5 Spd.  Other _____
A.C.  P.W.  AM-FM Tape  Vinyl Top

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**TERMS:** The terms shown in the boxes above are part of this Contract.

**Itemization of Amount Financed**

Cash Price
$

Cash Downpayment
$

Trade-In
Value of Trade-In
$
Lien Payoff to:
$

Unpaid Cash Price Balance
$

To Credit Insurance Company
$
To Public Officials for:
License, Tags and Registration
$
Lien Fee
$
To _____
$
To Service Contract
$
To _____
$
To _____
$
To _____
$

*We may retain a portion of amounts marked \* Paid to Others on Your Behalf*

Amount Financed
$

Finance Charge
$

Total of Payments (Time Balance)
$

Payment Schedule - You agree to pay to us the Amount Financed plus interest in uninterrupted monthly payments of $ _____ each, and a final payment of $ _____ The first payment will be due on _____, and then payments will be due on that same day of each month following.

**PROMISE TO PAY:** You agree to buy the Vehicle from us by making a Downpayment and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney, to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**ADDITIONAL TERMS AND CONDITIONS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

**NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IF BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

SELLER _____

BY _____ Date _____

BUYER _____ (SEAL) Date _____

BUYER _____ (SEAL) Date _____

---

**CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**

**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

(SEAL)

Co-Signer's Signature _____ Address _____ Date _____

(SEAL)

Co-Signer's Signature _____ Address _____ Date _____

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

(SEAL)

Co-Owner's Signature _____ Address _____ Date _____

**BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

BUYER _____ BUYER _____ CO-SIGNER _____ CO-SIGNER OR CO-OWNER _____

CBF FORM PA-21SLC (3/03)

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

COPY

## ADDITIONAL TERMS AND CONDITIONS

1. **HOW THE TOTAL OF PAYMENTS IS COMPUTED:** the Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge consists solely of interest computed daily on the outstanding balance of the Amount Financed. The Finance Charge shown on the front side has been computed on the assumption that we will receive all payments on their scheduled due dates.

2. **COMPUTING INTEREST:** We will charge interest on a daily basis on the outstanding balance subject to interest on each day of the loan term. The daily interest rate is equal to the Annual Percentage Rate divided by the number of days in that calendar year. Buyer agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge). Early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

3. **LATE CHARGE:** Buyer agrees to pay a late charge for any payment not made within 10 days after its due date. The late charge will be 2% per month on the unpaid amount of the payment. We will consider any part of a month in excess of 10 days to be a full month. The late charge will be due when earned. No late charge will be due if the reason that the payment is late is because, after default, the entire outstanding balance on this Contract is due. No late charge will be due if the only reason that the payment is late is because of a late charge assessed on an earlier payment.

4. **APPLICATION OF PAYMENTS:** We will apply payments in the following order of priority: first to interest; and then to late charges, fees, principal and any other amounts you owe in the order that we choose.

5. **PREPAYMENT:** You may prepay, in full or in part, the amount owed on this Contract at any time without penalty. If you prepay the Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make.

6. **WAIVERS.**

   a. **WAIVER BY SELLER AND ASSIGNEE:** We and Assignee waive the right to treat any property as security for the repayment of this Contract, except for the Vehicle and the other security specifically mentioned in this Contract.

   b. **WAIVERS BY BUYER, CO-SIGNER AND CO-OWNER:** You agree to make all payments on or before they are due without our having to ask. If you don't, we may enforce our rights without notifying you in advance. You give up any right you may have to require that we enforce our rights against some other person or property before we enforce our rights against you. You agree that we may give up our rights against some other person but not against you. You waive due diligence in collection and all defenses based on suretyship and impairment of collateral or security.

7. **INTEREST AFTER MATURITY AND JUDGMENT:** Interest at the rate provided in this Contract shall continue to accrue on the unpaid balance until paid in full, even after maturity and/or after we get a judgment against you for the amounts due. This will apply even if the maturity occurs because of acceleration. If at any time interest as provided for in this paragraph is not permitted by law, interest shall accrue at the highest rate allowed by applicable law beginning at that time.

8. **YOUR PROMISES ABOUT OUR SECURITY INTEREST:** You will not permit anyone other than us to obtain a security interest or other rights in the Vehicle. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Vehicle. You will assist us in having our security interest noted on the Certificate of Title to the Vehicle. You will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, you will pay the obligation and clear the lien.

9. **YOUR PROMISES ABOUT THE VEHICLE:** You will keep the Vehicle in good condition and repair. You will pay all taxes and charges on the Vehicle. You will pay all costs of maintaining the Vehicle. You will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. You will not use the Vehicle for illegal purposes or for hire or lease. You will not move the Vehicle from your address shown on the front of this Contract to a new permanent place of garaging without notifying us in advance.

10. **YOUR PROMISES ABOUT INSURANCE:** You will keep the Vehicle insured against fire, theft and collision until all sums due us are paid in full. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must name us as "loss-payee" on the policy. The insurance must be written by an insurance company qualified to do business in Pennsylvania and licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide us with at least 10 days' prior written notice of any cancellation or reduction in coverage. On request, you shall deliver the policy or other evidence of insurance coverage to us. In the event of any loss or damage to the Vehicle, you will immediately notify us in writing and file a proof of loss with the insurer. We may file a proof of loss on your behalf if you fail or refuse to do so. We may endorse your name to any check, draft or other instrument we receive in payment of an insured loss or return insurance premiums. We may apply any insurance proceeds we receive to repair or replace the Vehicle if, in our opinion, it is economically feasible and you are not then in default under this Contract. Otherwise, we will apply the insurance proceeds to reduce the unpaid balance due us.

11. **OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If you fail to keep your promises to pay filing fees, taxes, liens or the costs necessary to keep the Vehicle in good condition and repair, we may advance any money you promised to pay. If you fail to keep your promises about required insurance, we may advance money to obtain insurance to cover loss or damage to the Vehicle. We have the choice of whether or not to advance any money for these purposes. Such insurance will be limited to an amount not greater than you owe on this Contract. We will add any money we advance on your behalf to the balance on which we impose Finance Charges at the Annual Percentage Rate of this Contract. You

agree to repay the money advanced as we alone may specify: (i) immediately on demand, or (ii) along with your monthly payments. If we choose to allow you to repay the money advanced along with your monthly payments, we can choose the amount of these payments and how long you have to repay. If any of our rights stated in this paragraph is not permitted by law, we still have the other rights mentioned. Our payments on your behalf will not cure your failure to perform your promises in this Contract.

12. **DEFAULT:** In this paragraph "You" means the Buyer, Co-Signer and Co-Owner, or any one of them. You will be in "Default" of the Contract if any one or more of the following things happen:

   a.   You do not make any payment on or before it is due; or
   b.   You do not keep any promise you made in this Contract; or
   c.   You do not keep any promise you made in another Contract, Note, Loan or Agreement with Seller or Assignee; or
   d.   You made any untrue statement in the credit application for this Contract; or
   e.   You committed any forgery in connection with this Contract; or
   f.   You die, are convicted of a crime involving fraud or dishonesty, or are found by a court with jurisdiction to do so to be incapacitated; or
   g.   You file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you; or
   h.   You take the Vehicle outside the United States or Canada without our written consent; or
   i.   You use the Vehicle or allow someone else to use it in a way that causes it not to be covered by your insurance; or
   j.   You do something that causes the Vehicle to be subject to confiscation by government authorities; or
   k.   The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time; or
   l.   Another creditor tries to take the Vehicle or your money on deposit with Assignee by legal process.

13. **OUR RIGHTS IF YOU ARE IN DEFAULT OF THIS CONTRACT:** If you are in Default of this Contract, we may enforce our rights according to law. We may also do the things specifically mentioned in this Contract. We may do one of these things and at the same time or later do another. Some of the things we may do are the following:

   a. **ACCELERATION:** We can demand that you pay to us the entire unpaid balance owing on the Contract and all unpaid Finance Charges and other money due. You agree that you will pay this money to us in one single payment immediately upon receiving our demand.

   b. **REPOSSESSION:** We can repossess the Vehicle, unless prohibited by law. We can do this ourselves, have a qualified person do it for us, or have a government official (by replevin) do it for us. You agree that we can peaceably come on to your property to do this. Any personal property left in the repossessed vehicle will be held for thirty (30) days from the date of the notice's mailing. The personal property may be reclaimed within the thirty (30) day time period. Thereafter the property may be disposed of in the same manner as the motor vehicle and other collateral.

   c. **VOLUNTARY DELIVERY:** We can ask you to give us the Vehicle at a reasonably convenient place. You agree to give us the Vehicle if we ask.

   d. **DELAY IN ENFORCEMENT:** We can delay enforcing our rights under this Contract without losing any rights.

14. **SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE:** If we repossess without using a government official (by replevin):

   a. **NOTICE:** We will send you a Notice of Repossession to your last address we know about. This Notice will tell you how to buy back (redeem) the Vehicle. You will NOT have the right to reinstate the Contract. This means you will have to pay the total balance on the Contract and other amounts due. You may not get the Vehicle back by paying delinquent installments. This Notice will tell you other information required by law.

   b. **REDEMPTION:** You have the right to buy back (redeem) the Vehicle within 15 days of the mailing of the Notice and at any later time before we sell the Vehicle. If you do not redeem, you give up all claim to the Vehicle.

   c. **SALE:** If you don't redeem, we will sell the Vehicle. The money received at sale will be used to pay costs and expenses you owe, and then to pay the amount you owe on the Contract.

   d. **SURPLUS OR DEFICIENCY:** If there is money left, we will pay it to the Buyer. If there is not enough money from the sale to pay what you owe, Buyer and Co-Signer agree to pay what is still owed to us.

   e. **EXPENSES:** You agree to pay the costs of repossessing, storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law. These costs will only be due if:
      1. Default exceeds fifteen (15) days at the time of repossession;
      2. The amount of costs are actual, necessary and reasonable; and
      3. We can prove the costs were paid.

15. **HEIRS AND PERSONAL REPRESENTATIVES BOUND:** After your death, this Contract shall be enforceable against your heirs and personal representatives of your estate.

16. **GOVERNING LAW:** This Contract is to be interpreted according to the law of Pennsylvania.

17. **SEVERABILITY OF PROVISIONS:** If for any reason any part of this Contract shall become illegal, void or unenforceable, that part shall not be a part of this Contract.

18. **ASSIGNMENT BY BUYER:** Buyer shall not assign this Contract.

19. THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, UNLESS WE HAVE GIVEN YOU A SEPARATE WRITTEN WARRANTY.

Buyer's Guide Window Sticker. If the Car which is described on the face of this Contract has a Buyer's Guide Window Sticker required by the Federal Trade Commission Used Car Trade Regulation Rule, the following notice applies:

The information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

NOTICE---ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

**NOTICE OF PROPOSED CREDIT INSURANCE**

The signer(s) of this Contract hereby take(s) notice that Group Credit Life Insurance coverage or Group Credit Accident and Disability Insurance coverage will be applicable to this Contract if so marked on the front of this Contract, and each such type of coverage will be written by the insurance company named. This insurance, subject to acceptance by the insurer, covers only the person or persons signing the request for such insurance. The amount of charge is indicated for each type of Credit Insurance to be purchased. The term of insurance will commence as of the date the indebtedness is incurred and will expire on the original scheduled maturity date of the indebtedness. Subject to acceptance by the insurer and within 30 days, there will be delivered to the insured debtor(s) a certificate of insurance more fully describing the insurance. In the event of prepayment of the indebtedness, a refund of insurance charges will be made when due.

---

**NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.**

Ex. 2